**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SAINT ANTHONY HOSPITAL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 25 C 6335** |
| | ) | |
| **ELIZABETH WHITEHORN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

Saint Anthony Hospital has sued Elizabeth Whitehorn in her official capacity as the Director of the Illinois Department of Healthcare and Family Services (HFS). The Hospital's complaint asserts a single claim for relief, but it has two distinct aspects. First, the Hospital alleges that HFS violates due process by providing inadequate information about how it calculates payment for the Hospital's Medicaid claims. Second, the Hospital alleges that managed care organizations (MCOs), which process most of its claims under contracts with HFS, similarly fail to provide adequate notice of the components of its payment calculations. With respect to the portion of the Hospital's claim relating to the MCOs, Whitehorn has filed a partial motion to dismiss for failure to state a claim and failure to join necessary parties. With respect to the portion of the claim about payments directly from HFS, Whitehorn has filed a partial motion for summary judgment. For the reasons stated below, the Court grants the partial motion to dismiss but denies the motion for partial summary judgment.

**Background**

Medicaid is a federal program to provide healthcare services to low-income individuals.  Illinois participates in Medicaid and receives federal funding under certain conditions.  HFS administers the Medicaid program in Illinois, and Whitehorn is the Director of HFS.  The Court will refer to the defendant in this case as Whitehorn or HFS.

Saint Anthony Hospital is a not-for-profit hospital that serves patients on the south and west sides of Chicago.  Most of its patients receive Medicaid or charity care. The Hospital qualifies as a "safety-net" hospital because it serves a high proportion of Medicaid patients.  *See* 305 Ill. Comp. Stat. Ann. 5/5-5e.1.  When the Hospital treats a patient covered by Medicaid, it submits a bill based on rates it sets independent of a patient's insurance.  For Medicaid patients, that price generally is not the price the Hospital will be paid.

Saint Anthony receives Medicaid payments in two ways.  Some payments come directly from HFS.  Illinois also contracts with managed care organizations (MCOs), most of which are affiliates of large insurance companies, which perform Medicaid payment calculations and pay providers.  *See* Compl. ¶ 30 (listing the seven MCOs contracting with Illinois); 42 U.S.C. § 1396u-2 (permitting states to employ MCOs to administer Medicaid); *id.* § 1396b(m) (defining MCOs).  Illinois pays the MCOs a flat monthly fee per patient, and the MCOs reimburse the Hospital for care provided.  Most of Saint Anthony's Medicaid payments come from MCOs.

HFS pays the Hospital for services rendered to Medicaid patients according to published rates and rules.  *See* 89 Ill. Admin. Code §§ 148.112, 148.122, 148.140, 148.290, 148.402, 149.100, 149.105.  This is called the "fee-for-service" system.  HFS

adopts payment rates for many claims using industry standard codes: Diagnosis Related Group (DRG) codes for categories of inpatient services and Enhanced Ambulatory Patient Group (EAPG) codes for categories of outpatient services.

For inpatient claims, each hospital is assigned a base DRG rate. The DRG codes are modified by a severity-of-illness code. Inpatient claims are usually computed with the DRG base rate multiplied by a uniform weighing factor for the specific treatment and then adjusted with other add-ons and reductions. HFS publishes each hospital's DRG base rate and the weighing factors for specific DRG codes.

As a hospital that serves a high proportion of Medicaid patients, the Hospital is entitled to per diem add-on payments of fixed dollar amounts for inpatient care under the Medicaid Percentage (MPA), Medicaid High Volume (MHVA), and Safety-Net adjustment programs. *See* 305 Ill. Comp. Stat. Ann. 5/5-5.02(b)-(d); *id.* § 5/14-12.5(b)(8)-(9). For eligible inpatient claims on dates of service in rate year 2025, the Hospital's add-on rates were $336.02 under the MPA, $159.41 under the MHVA, and $425 under the Safety-Net adjustment. The Hospital receives the first two add-ons at higher rates for care provided in its pediatric unit.

The Hospital is also entitled to policy adjusters, which provide a percentage increase to the DRG or EAPG reimbursement rate for certain treatments by eligible hospitals. Additionally, the Hospital is entitled to funds under the Hospital Assessment Program (HAP), a tax on hospitals which is largely redistributed back to them. HAP increases the rates for individual inpatient claims for eligible hospitals that provide Medicaid services. The Hospital may also be entitled to additional outlier payments when the cost of treatment exceeds its typical cost. And payment may be reduced

under a transfer adjustment when a patient is transferred to another hospital before discharge. Many of these components of payment change often, including, for example, the Hospital's DRG base rate. In the past five years, HFS has altered it five times and the legislature four times.

Other specific inpatient hospital services are paid on a per diem basis with a fixed rate multiplied by the number of inpatient days.

Much like inpatient claims, outpatient claims are calculated based on the hospital's specific EAPG base rate; a system-wide weighing factor for specific treatments based on the EAPG code; consolidation, packaging, or discounting factors based on all treatments provided; and any add-ons for the specific treatment, such as the Expensive Drug and Device Add-On Payment. The only policy adjuster available for outpatient claims is the MHVA, which is automatically included in the Hospital's base EAPG rate.

HFS processes fee-for-service payments according to these rules with the Medicaid Management Information System (MMIS), a mainframe computer program. For inpatient claims, after confirming patient eligibility, the MMIS calculates the base payment rates, applies add-ons and policy adjusters, applies payment limits, and reduces the amount by Medicare or third-party payments. Similarly, for outpatient claims, MMIS confirms eligibility of the patient and treatment, determines the EAPG code, multiplies the base rate by the weighing factor and any other relevant factors, and applies add-ons.

This complex calculation is partially documented in several ways: remittance forms, paid-claims reports, and online calculators. HFS provides the Hospital with an

4

electronic remittance form.  The parties agree that the remittance forms do not disclose all payment components (including the DRG or EAPG base rate, add-ons, or adjusters) or whether the Hospital has been fully compensated.  Nor do the remittance forms specify any HAP claims payment increase.  Safety-net hospitals may also receive periodic paid-claims reports on request.  The Hospital says it has not received these forms after requesting them or has received incomplete forms lacking data on inpatient per diem or outpatient claims.  The parties dispute whether key information, including the base payment rate and DRG weighing factor, is included in the paid-claims report.

Finally, HFS provides calculators on its website to allow hospitals to determine an estimate of fee-for-service payments.  But HFS instructs that "if there is ever a difference in payment amounts calculated through this spreadsheet versus the MMIS, the MMIS is correct."  Pl.'s Resp. to Def.'s Mot. for Summ. J. at 5.  The Hospital maintains that these calculators are incomplete and exclude certain payment components, including the number of days of service and reductions for Medicare and third-party payments.  The Hospital does not contest that it has access to the missing information in other sources, including its own claim submissions and HFS's remittances.  But the Hospital lacks staff dedicated to compiling information across sources to confirm that it has been accurately paid for each of thousands of claims that it submits each year.

HFS admits that this payment system has at times resulted in significant error rates.  Based on a paid-claims report requested from HFS in June 2025, the Hospital was not paid or was underpaid the Safety-Net Add-On for about half of the reported claims, and several hundred claims were lacking the MPA and MHVA add-ons.  HFS

explained that these add-ons were absent due to programming errors, and corrective payments were being processed. An October 2025 paid-claims report showed that the Safety-Net Add-On payment was absent for 50 of 120 claims, which HFS also attributed to a programming error.

When a claim is disputed, a provider may request additional information or an adjustment through an informal process detailed in 89 Ill. Admin. Code 140.25.

In 2020, the Hospital sued to enforce the timely payment requirements of the Medicaid Act, 42 U.S.C. §§ 1396a(a)(37)(A) and 1396u-2(f). Another judge of this court dismissed the claim on the grounds that the Hospital lacked a private right of action and failed to state a claim. *See Saint Anthony Hosp. v. Eagleson*, 548 F. Supp. 3d 721, 729 (N.D. Ill. 2021). The procedural history of that case is described in *Saint Anthony Hospital v. Whitehorn*, 132 F.4th 962, 967–68 (7th Cir. 2025) (en banc). In that lawsuit, the Hospital attempted to supplement its complaint with a due process claim relating to the State's failure to provide information about payment calculations and to require MCOs to provide the same information. The district court denied the Hospital's motion to supplement, *St. Anthony Hosp. v. Eagleson*, No. 20 C 2561, Dkt. 110 at 3 (N.D. Ill. July 13, 2021), and the en banc Seventh Circuit affirmed in 2025 but noted that the Hospital could "proceed in a separate case" because Illinois had waived the defense of claim preclusion. *Whitehorn*, 132 F.4th at 980.

In June 2025, the Hospital filed the present suit, alleging a violation of procedural due process through inadequate notice. The Hospital alleges that the State and the MCOs fail to provide sufficient information for it to determine whether it has been properly paid. The Hospital seeks declaratory and injunctive relief requiring prompt

notice of whether it has been paid add-on payments and HAP claims payment increases.

## Discussion

### A.  Motion to dismiss

Whitehorn has moved to dismiss the Hospital's claim for failure to join necessary parties and failure to state a claim.

#### 1.  Failure to join

Whitehorn argues that the MCOs, who are not parties to the case, must be joined because the Hospital's complaint alleges inadequate notice by both HFS, in its fee-for-service claim reimbursement, and the MCOs.  Whitehorn frames the relief sought as requiring a change in the conduct of the MCOs.

Under Federal Rule of Civil Procedure 12(b)(7), a claim may be dismissed for "failure to join a party under Rule 19."  Fed. R. Civ. P. 12.  Rule 19 requires joinder of all necessary parties as defined by Rule 19(a); if joinder is not feasible, the Court must determine whether a necessary party is indispensable.  Fed. R. Civ. P. 19.  "The purpose of Rule 19 is to 'permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources.'" *Askew v. Sheriff of Cook Cnty.*, 568 F.3d 632, 634 (7th Cir. 2009) (quoting *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir. 1990)).  Dismissal under Rule 19 "is not the preferred outcome[,]" and the Seventh Circuit has instructed that courts should be "reluctant to dismiss for failure to join where doing so deprives the plaintiff of his choice of federal forum."  *Id.* (quoting *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001)).  The movant bears the burden of demonstrating that the requirements

of Rule 19 are satisfied. *See, e.g.*, *Ochs v. Hindman*, 984 F. Supp. 2d 903, 906 (N.D. Ill. 2013).

Courts engage in a two-step inquiry under Rule 19. First, a court must determine whether a party falls within the scope of the rule as a necessary party who "should be joined if feasible." *CCP Golden/ 7470 LLC v. Breslin*, 161 F.4th 461, 468 (7th Cir. 2025) (quoting *Thomas v. United States*, 189 F.3d 662, 667 (7th Cir. 1999)). Second, if a party is necessary under Rule 19 but joinder is not feasible, a court proceeds to Rule 19(b) and weighs the enumerated factors to assess whether the action should be dismissed. *Id.*

Rule 19(a)(1) defines a "required party":

(1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
    (A) in that person's absence, the court cannot accord complete relief among existing parties; or
    (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
        (i) as a practical matter impair or impede the person's ability to protect the interest; or
        (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

It is not disputed that the MCOs are subject to service of process and that joinder would not deprive the court of subject matter jurisdiction, which it derives from 28 U.S.C. § 1331. Whitehorn argues that the MCOs are necessary parties under Rule 19(a)(1)(B). But the MCOs have not "claim[ed] an interest relating to the subject of the action[,]" Fed. R. Civ. P. 19(a)(1), despite having done so in the prior litigation between the Hospital and HFS. *See Saint Anthony Hosp.*, 548 F. Supp. 3d at 736 (explaining that the MCOs

8

intervened to argue that "any dispute between Saint Anthony and the MCOs about their payments belongs in front of an arbitrator").  Whether or not the MCOs satisfy the criteria of Rule 19(a)(1)(B)(i) or (ii), they are not subject to that section of the rule because they failed to claim an interest in this case.  *See Davis Cos.*, 268 F.3d at 483 ("[U]nder Rule 19(a) it is the absent party that typically must claim such an interest."); *Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 49 (2d Cir. 1996) ("It is the absent party that must claim an interest." (cleaned up)).  This is a case where failure to claim an interest is dispositive given that extended prior litigation has almost certainly put the MCOs on notice of the present litigation.

Even if the MCOs had claimed an interest, it is not apparent that a victory for the Hospital would "necessarily impair or impede" the ability of the MCOs to protect their interests.  *Breslin*, 161 F.4th at 468.  As non-parties, under the principles of collateral estoppel, the MCOs would not be bound by a judgment.  The only claim in this case is a due process claim against Whitehorn, a state official, under section 1983; the MCOs are not proper defendants as they are not state actors subject to the requirements of the Constitution's Due Process Clause, as explained below.  And, as Whitehorn points out, all but one of the MCOs and the Hospital have entered into arbitration agreements, providing a separate forum for resolving certain disputes.  Although Whitehorn argues that the MCOs would therefore face a "risk of . . . inconsistent obligations[,]" Rule 19 requires joinder only when "an existing party" would face that risk.  Fed. R. Civ. P. 19(a)(1)(B)(ii).  Even if that section applied, it is not clear how the MCOs would face an inconsistent obligation from this case when they cannot be bound by a judgment and owe no due process obligations directly to the Hospital.

Rule 19 provides another basis for joining a necessary party, when "in that person's absence, the court cannot accord complete relief among existing parties[.]" Fed. R. Civ. P. 19(a)(1)(A). That provision does not require the absent party to claim an interest. But Whitehorn did not argue until her reply that the Court lacked the ability to afford complete relief absent joinder. Whitehorn has therefore waived any argument under Rule 19(a)(1)(A). "Just as undeveloped arguments are waived, so are arguments raised for the first time in reply briefs." *United States v. Williams*, 85 F.4th 844, 849 (7th Cir. 2023).

In sum, Whitehorn has failed to carry her burden to demonstrate that the MCOs must be joined as necessary parties or the claim must be dismissed.

### 2. Failure to state a claim

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Put differently, the "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]'" *Hughes v. Nw. Univ.*, 63 F.4th 615, 628 (7th Cir. 2023) (quoting *Twombly*, 550 U.S. at 555). In ruling on a Rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Emerson v. Dart*, 109 F.4th 936, 941 (7th Cir. 2024).

Whitehorn argues that the part of the Hospital's claim resting on actions of the MCOs must be dismissed. The due process claim is brought solely against HFS, but

10

the Hospital characterizes the notice provided by both HFS and the MCOs as insufficient. Whitehorn says that HFS is not responsible for any failure by the MCOs to provide information to the Hospital and that the MCOs are not proper defendants on a claim under section 1983. The Hospital counters that the MCOs are state actors properly subject to a claim under section 1983, and even if not, HFS cannot contract away its own due process obligations.

Section 1983 provides a cause of action for violations of federal law by parties acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia[.]" 42 U.S.C. § 1983. The Supreme Court has articulated several tests for when a private party acts under color of law. *See Listecki v. Off. Comm. of Unsecured Creditors*, 780 F.3d 731, 738 (7th Cir. 2015). A private party acts under color of law when "the [S]tate effectively directs or controls the actions of the private party such that the [S]tate can be held responsible for the private party's decision. . . . [or] the [S]tate delegates a public function to a private entity." *Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019) (alteration in original).

The Hospital has not alleged a sufficient nexus between the State and the MCOs to hold HFS liable for the actions of the MCOs. There is no evidence of a "concerted effort between a state actor" and the MCOs, nor is there evidence to find the actions of the MCOs "fairly attributable to the state." *L.P. v. Marian Cath. High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017) (cleaned up); *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982) ("Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."). Compliance with state regulations does not make a private actor's conduct state action. *Am. Mfrs.*

*Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). Nor does receipt of public funds. *Rendell-Baker*, 457 U.S at 840. Indeed, the actions of private parties working within the Medicaid scheme are not necessarily state actions. *See Blum v. Yaretsky*, 457 U.S. 991, 1005 (1982) (holding that no state action occurred in decisions by physicians at private nursing homes to transfer or discharge Medicaid patients).

Nor are the MCOs performing one of the "'very few' . . . traditionally and exclusively" public functions. *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019) (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978)). The parties debate how to define the actions of the MCOs, which could be characterized broadly as paying for medical care or narrowly as paying public funds for medical care under a formula set by state law. Paying for medical care or administering insurance payments to providers is certainly not a traditional and exclusive public function in this country. *Id.* at 810 (explaining that "administering insurance payments" is not a traditional and exclusive public function). And the fact that these payments are governed by state law or involve public funds does not transform the MCOs into state actors. In cases considering various functions performed by MCOs, courts across the country have agreed that MCOs are not state actors. *See, e.g.*, *New Jersey Primary Care Ass'n Inc. v. New Jersey Dep't of Hum. Servs.*, 722 F.3d 527, 537 (3d Cir. 2013) (holding that "the adequacy or inadequacy of the internal MCO appellate process" for denial of Medicaid claims "cannot rise to a constitutional violation"); *Gonzalez–Maldonado v. MMM Healthcare, Inc.,* 693 F.3d 244, 248 (1st Cir. 2012) ("Because we hold that the [MCOs] are not governmental actors, the appellants' constitutional claims necessarily fail[.]"); *Umeze v. New York State Dep't of Health*, No. 1:24-CV-7425 (MKV), 2025 WL

12

2733451, at *8 (S.D.N.Y. Sept. 25, 2025) (holding in the context of a dispute between a provider and an MCO that the MCO was not a state actor); *Bourbon Cmty. Hosp., LLC v. Coventry Health & Life Ins. Co.*, No. 3:15-CV-00455-JHM, 2016 WL 51269, at *3 (W.D. Ky. Jan. 4, 2016) (collecting cases holding that MCOs are not state actors).  The Hospital has not identified a single case where a Court held that an MCO was a state actor liable under section 1983.

The Hospital asserts that even if the MCOs are not state actors under section 1983, HFS has due process obligations with respect to these payments that it cannot contract out to the MCOs.  The Hospital has not identified any binding authority holding that although a private party did not perform state action, a state had due process obligations relating to that party's conduct.

*Blum v. Yaretsky* demonstrates why the Hospital's argument is unavailing.  In *Blum*, Medicaid patients challenged decisions by committees of physicians at private nursing homes to discharge or transfer patients because they required different levels of care, without notice to the patients or a hearing.  *Blum*, 457 U.S. at 993.  These assessments ensured compliance with Medicaid requirements, and the state responded to the decisions by adjusting Medicaid benefits.  *Id.* at 994–95.  The Court held that the committees had not performed state action, as "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."  *Id.* at 1004.  So too here.  Like the committees in *Blum*, the MCOs perform, on behalf of the State, a function required by statute, but without sufficient entanglement with HFS to make the State responsible for failings in

13

the notice provided by the MCOs. Although the MCOs calculate claim payments according to state law and regulation—unlike the medical judgments at issue in *Blum*—HFS does not dictate the remittance information provided by MCOs nor prohibit the MCOs from providing more information as the Hospital contends is required. HFS cannot be held liable for a due process violation consisting of its failure to require more process by the private actor determining the level of state-provided benefits. *See San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 547 (1987) (holding that the federal government's failure to supervise the U.S. Olympic Committee's use of its property rights was not state action but rather "[m]ere approval" or "acquiescence" (quoting *Blum*, 457 U.S. at 1004)); *cf. Peery v. Chi. Hous. Auth.*, 791 F.3d 788, 790 (7th Cir. 2015) (holding that agency was not responsible for drug testing of tenants by building owners even though the agency encouraged it).

A handful of courts have reasoned that a state cannot delegate its constitutional or statutory responsibilities to contractors, but those courts found that delegation was impermissible based on particular governing statutes or regulations or because a private actor performed state action under section 1983. The Sixth Circuit, for example, held that under a provision in the Medicaid statute that requires a state to designate "a single State agency to administer or to supervise the administration of the [Medicaid] plan[,]" 42 U.S.C. § 1396a(a)(5), "the state Medicaid agency remains legally responsible for problems with a state's Medicaid program notwithstanding delegations of authority to other state agencies or private parties." *See Wilson v. Gordon*, 822 F.3d 934, 953 (6th Cir. 2016) (cleaned up). The Hospital does not invoke this provision, which reaches much more broadly than the notice dispute here. Instead, the Hospital points to Illinois

14

law requiring HFS to "make [hospital access] payments to hospitals or require capitated managed care organizations to make payments as set forth in this Section." 305 Ill. Comp. Stat. Ann. 5/5A-12.7(a). But the Hospital has not pointed to any law indicating that HFS has a statutory responsibility to ensure that the MCOs provide notice of payments, let alone notice in any particular form. Nor has the Hospital identified a regulation that gives HFS or similar state agencies responsibility for ensuring that the MCOs provide constitutionally required notice. *See K-V Pharm. Co. v. Cook*, No. 1:12-CV-2491-CAP, 2014 WL 11833266, at *3 (N.D. Ga. Apr. 7, 2014) (citing regulations, in a different context, that "place the responsibility for compliance of [MCOs] squarely on the state that contracts with them"). Rather, in the situation presented here, the Medicaid regulations enforce distance between the State and the MCOs. *See* 42 C.F.R. § 438.60 (prohibiting state agencies from paying providers for services covered by a contract with an MCO); *id.* § 438.6(c)(1) (prohibiting state agencies from "in any way direct[ing] the MCO's . . . expenditures under the contract"). As explained earlier, this is also not a case where the MCOs act under color of law and HFS has entirely delegated its statutory functions to private parties, another setting in which courts have held that a state cannot effectively contract out its constitutional obligations.

The Hospital has identified a myriad of problems with the performance of the MCOs, the State's regulation of the MCOs, and profit motives that may lead to underpayment by the MCOs. But the Hospital has not articulated a plausible basis for holding Whitehorn responsible for a failure to give notice by private parties that are not themselves bound by the Due Process Clause. The Hospital may have (or could seek) rights to payment information under its contracts with the MCOs, but this suit does not

15

involve alleged breaches of those contracts.

For these reasons, the Hospital's due process claim is dismissed to the extent it seeks relief against Whitehorn in connection with the allegedly inadequate notice provided by the MCOs.

## B.    Motion for partial summary judgment

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when, after drawing all reasonable inferences from the record in favor of the nonmoving party, a reasonable trier of fact could return a verdict for the nonmovant. *Id.*

The party seeking summary judgment bears the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the party that bears the ultimate burden at trial must identify "specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). If the party with the burden of proof cannot show that each essential element of its claim or defense is factually supported, summary judgment against that party is appropriate. *Celotex*, 477 U.S. at 323–24.

Whitehorn seeks summary judgment on the portion of Saint Anthony's due process claim in which it alleges inadequate information provided by HFS in connection with its fee-for-service payments. Whitehorn contends that HFS provides the Hospital

16

with sufficient information, including the DRG and EAPG codes for treatments, the amount HFS paid, and the components of each payment.  The Hospital asserts that HFS does not specify the components of each payment, but rather the components (such as add-ons and adjusters) that it *should* pay under the governing laws and regulations.

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving persons of "life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The process that is due depends on context but includes notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).  In analyzing a due process claim involving an alleged deprivation of property, the Court must address three questions:  whether the Hospital has a cognizable property interest, whether the Hospital was deprived of that interest, and whether the deprivation occurred without due process.  *See Rock River Health Care, LLC v. Eagleson*, 14 F.4th 768, 773 (7th Cir. 2021).

On the first question, the Hospital has a property interest in receiving the payments required by statute from HFS for treatment provided to Medicaid patients. Whitehorn has not contested this point, so the Court does not further address it.

On the second question, there is a genuine dispute regarding whether the Hospital was deprived of property.  Whitehorn argues that the Hospital's due process claim cannot survive because the Hospital "does not seek better notice for any underpayments, and does not even allege any underpayments."  Def.'s Mem. in Supp.

17

of Mot. for Summ. J. at 8. That is not so. The Hospital alleges "unwarranted delays in payment, underpayments, and unjustified denials." Compl. ¶¶ 3, 62, 88. The Hospital does not merely contend that it faces a risk of deprivation, as in one case that Whitehorn cites, but rather that it does not know the full extent of systemic underpayment. *See Arrington v. Helms*, 438 F.3d 1336, 1348 n.12 (11th Cir. 2006). HFS concedes that it underpaid the Hospital by not paying certain add-ons and adjustments, at times on well over half of the claims submitted in a given period. Def.'s Resp. to Pl.'s L.R. 56.1 Stmt. ¶¶ 25, 26, 28, 30. Although HFS sought to correct these errors, the Hospital has shown that there is a genuine factual dispute regarding whether it was deprived of property.

Whitehorn also contends that HFS has not underpaid the Hospital because federal law generally requires it to pay Medicaid claims within twelve months, and it typically pays the Hospital one month after a claim is submitted. *See* 42 C.F.R. § 447.45(d)(4); Def.'s Mem. at 14. But HFS's choice to make payments promptly does not excuse it from making the full payment required by law or complying with the requirements of due process. Perhaps HFS corrects all underpayments within twelve months. Yet HFS does not argue or present any evidence to support that theory. If this is so, it is hard to fathom that a regulation setting a deadline by which payment must be made could allow HFS to avoid due process obligations for nearly a year after making incomplete payments.

The final question is whether HFS's procedures satisfy due process. This requires weighing three factors: (1) whether a private interest is implicated by the government action; (2) "the risk of an erroneous deprivation of such interest through the

18

procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Before considering these factors, the Court notes that there is a genuine dispute between the parties regarding the current level of notice provided, which makes it somewhat challenging to assess the value of additional safeguards. At issue is whether HFS provides the Hospital with sufficient information to determine whether it has been fully paid for Medicaid claims. Whitehorn contends that between the remittance forms, paid-claims reports, and online calculators, HFS provides the Hospital with the DRG and EAPG base rates, weighing factors, add-ons, and adjusters that are used to calculate claims. The Hospital, by contrast, contends that the information that HFS provides reflects the rates and add-ons that *should be* applied, not those actually applied. It notes that HFS's remittances provide only the DRG or EAPG grouper code; the paid claims reports are untimely, do not describe adjusters or the weight of the DRG/EAPG grouper, and omit outpatient and per diem claims; and HFS itself discounts its online calculators as non-authoritative sources when they are in conflict with the payment calculated by MMIS.

Turning to the *Mathews* test, the Hospital has an interest in receiving full payment for services it provides to Medicaid patients, which are a significant portion of its patient population. This interest "furthers the purpose of Medicaid to ensure that care and services are available to those in need." *Rock River*, 14 F.4th at 777. Yet the interest is somewhat limited because providers are "only ancillary beneficiaries of the

19

statutory program." *Id.*

The risk of erroneous deprivation through the procedures that HFS uses is substantial. The Hospital contends it does not know whether it has been fully paid on the thousands of claims it submits each year. It points to evidence of serious and regular errors in HFS's calculation of payments. Pl.'s Resp. to Def.'s Mot. for Summ. J. at 17. Any errors are apparently due to computer programming issues, and HFS has sought to remedy errors. But requiring HFS to provide a more thorough, timely explanation of its payment calculations could allow HFS to recognize errors in the programming of MMIS and promptly correct or even prevent underpayments. Requiring a more detailed (and prompt) explanation of payment calculations would also help the Hospital take advantage of post-deprivation procedures to remedy underpayments.

Finally, Whitehorn fails to make any argument regarding the government's interest or the burden of providing the requested additional notice. Whitehorn focuses on the Hospital's reduced interest because it does not face the termination of benefits and is not an individual welfare recipient. She frames the Hospital's desired notice as a reorganized version of data that HFS already provides the Hospital, which suggests that any administrative burden will not be tremendous. Additionally, it is in the State's interest to provide accurate payments to Medicaid providers and comply with the law. On balance, a reasonable determination could be made that the Hospital's interest and the value of additional safeguards outweigh the modest fiscal and administrative burdens to HFS.

Whitehorn's primary objection to the Hospital's due process claim is that any deprivations are random and unauthorized, so the post-deprivation remedies available

under Illinois law satisfy due process.  *See Vargas v. Cook Cnty. Sheriff's Merit Bd.*, 952 F.3d 871, 875 (7th Cir. 2020).  Whitehorn contends that HFS seeks to comply with the statutory requirements for Medicaid payments, and underpayments are caused by computer errors rather than deliberate actions.  That characterization is supported by the record, yet HFS misinterprets due process doctrine on this point.  A random and unauthorized deprivation is one that is unforeseeable and does "not occur as a result of some established state procedure."  *See, e.g.*, *Parratt v. Taylor,* 451 U.S. 527, 543 (1981) (characterizing failure to comply with prison mail handling procedures as random and unauthorized), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).  Post-deprivation procedures alone are adequate in this "narrow category of due process cases where the plaintiff claims he was denied a meaningful pre-deprivation hearing, but under circumstances where the very notion of a pre-deprivation hearing would be impractical and even nonsensical, and where the deprivation was not carried out through established state procedures."  *Armstrong v. Daily*, 786 F.3d 529, 539 (7th Cir. 2015).  By contrast, here the Hospital contends, and a reasonable factfinder could determine, that "it is the state system itself that destroys a complainant's property interest, by operation of law[.]"  *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982).  HFS's system operates as programmed to calculate Medicaid payments, and any deprivations in property that result do not qualify as random and unauthorized.

Even if post-deprivation procedures could, in theory, satisfy due process in a case like this one, a reasonable jury could find that the post-deprivation procedures under Illinois law do not meet the constitutional bar.  To avail itself of a post-deprivation remedy, a cash-strapped safety-net hospital is left to piece together various data

21

sources to determine what payments the State failed to make. Although the Hospital has detected some underpayments, there is a genuine dispute over the level of resources it must expend to do so. In particular, the parties dispute whether the Hospital need only run numbers on an Excel spreadsheet or instead must hire additional personnel to individually verify HFS's partially documented calculations on thousands of claims. Undre the law, notice must actually inform a party facing a deprivation of property of the deprivation, and a jury could find that the data given to the Hospital does not do so. *Mullane*, 339 U.S. at 315. There is a genuine dispute regarding whether the patchwork of data given to the Hospital adequately informs it of the basis for the incomplete Medicaid payments that deprive the Hospital of property.

## C.    Motion to strike

Whitehorn moves to strike some of the allegations in the complaint as immaterial and in violation of Federal Rules of Civil Procedure 8 and 12. Rule 8 requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). And Rule 12 permits a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). But "striking a portion of a pleading is a drastic remedy" and motions to strike are "infrequently granted." 5C Wright & Miller's Fed. Prac. & Proc. Civ. § 1380 (3d ed. 2025). "To prevail on a motion to strike, the moving party must show that the challenged allegations have no possible bearing upon the subject matter of the litigation and will be prejudicial to it." *Marshall v. Munder as co-trustee of 4-M River Farm Tr.*, No. 23 C 1958, 2024 WL 2861793, at *6 (N.D. Ill. June 5, 2024).

Whitehorn takes issue with a twenty-nine-page complaint for a one-count lawsuit.

22

She contends that the complaint includes excessive and irrelevant factual material regarding prior litigation between the parties, the nature of Saint Anthony's patient population, Illinois's managed-care system, and "imperfections in the Medicaid statutory scheme and Illinois' Medicaid program that are not at issue here." Mot. to Strike ¶ 4. The Court agrees that some aspects of the complaint, including, for example, the descriptions of the profit motives of the MCOs, are not critical to the Hospital's claim against HFS. But the allegations have a relationship to the subject matter of the litigation and provide relevant background information. The procedural history of the case is not unfairly prejudicial to Whitehorn. Nor are the allegations about the complex procedures and set of actors related to Medicaid, including critiques of the Illinois Medicaid system, so irrelevant as to be prejudicial and lack *any* bearing on the subject matter of the case.

## Conclusion

For the foregoing reasons, the Court grants defendant's partial motion to dismiss [dkt. 23] but denies defendant's motion for partial summary judgment [dkt. 24]. Plaintiff's due process claim is dismissed to the extent plaintiff seeks to impose liability upon defendant in connection with the alleged inadequacy of notice provided by the managed care organizations (MCOs). The Court also denies defendant's motion to strike [dkt. 27]. A status hearing remains set for February 25, 2026 at 9:00 a.m. The following call-in number will be used for the hearing: 650-479-3207; access code 2305-915-8729. The parties should be prepared to discuss how to proceed with discovery in

light of the Court's ruling and how any previously-set deadlines should be adjusted.

_____

MATTHEW F. KENNELLY
United States District Judge

Date:  February 19, 2026